## No. 244.

MCMAHON AND PERRIN VS. THE ST. LOUIS, ARKANSAS AND TEXAS RAILROAD COMPANY.

1.  An injunction to prohibit the construction of a public work, the building of which involves no taking or invasion of plaintiff's property, but only an alleged consequential damage to its value, which is conjectural and incapable of ascertainment until after the construction, may be properly bonded, notwithstanding the provision of Article 156 of the Constitution.

2.  Article 156 of the Constitution only adds the requirement of compensation for *damage* to private property to the former requirement of compensation for the *taking* of property.   The compensation in both cases is restricted to and measured by the value of the property itself, being the whole value when *taken* and the diminished value when *damaged*. The article does not rescue from the category of *damna absque injuriâ*, mere consequential injuries to the owners resulting from discomfort, inconvenience, loss of business and the like.

3.  The nature and measure of the damage recoverable are the actual diminution in the value of the property for sale or rental, occasioned by the public work.

APPEAL from the First District Court, Parish of Caddo.
    *Hicks*, J.

*R. J. Looney*, for Plaintiffs and Appellees:

1.   Any act complained of that would amount to a trespass or interfere with the use of real

41    827
115   335

41    827
118   859
f119  1055

41    827
121   799

41    827
e122  143

property, is not boudable when enjoined. Marion vs. Johnson, 22 Ann. 512; C. P. 307; 14 Ann. 57; 7 Rob. 442; 12 Ann. 455; 24 Ann. 154; 26 Ann. 603; 36 Ann. 918, and cases cited.

2. The trial judge erred in refusing to charge the jury as to the injunction and attorney's fees. 5 Ann. 518; 11 Ann. 1032; 29 Ann. 571; 34 Ann. 61.

3. The acts of defendant were in violation of prohibitory law. Constitution, Art. 156; R. C. 2626-7-8, 2633; 34 Ann. 357; 35 Ann. 1045, and 125 United States Supreme Court Rep., 161 to 170.

_Alexander & Blanchard_ for Defendant and Appellant:

1. The damages entitled to be recovered by the property owners, under Article 156 of the Constitution of 1879, are limited to the diminished market value of the property caused by the public construction, or the impaired value of any permanent improvements which may have been put upon the ground for a special purpose, and which may have been thereby rendered useless.

Mere inconveniences and annoyances, or supposed loss of profits in business, are not recoverable. Chicago vs. Taylor, 125 United States Supreme Court Reports, 161.

2. Under the most latudinous construction that could be given to that article the plaintiffs have suffered no damage.

Their house was built on leased ground, and its original cost of construction was only $1650. They bought it, together with the unexpired five years' lease and presses, shortly before the tracks were laid, for $2500 on five years' credit, and one of them testifies, on the trial, that he would not then take $2500 for it excluding the presses.

Even if such could be allowed no damage to plaintiff's business is shown, on the contrary one of them swears that if their books were balanced they would show no profit; that neither he nor his partner put a dollar into the business; and finally that one Loeb, who is no party to this suit, owns a third interest in the business.

The opinion of the Court was delivered by

FENNER, J. Plaintiffs are the lessees from the City of Shreveport of a certain lot of ground for an original term of ten years, of which about five years had expired at date of this suit. They owned a building constructed on said lot in which they conducted a wood and hide business.

They brought a suit against the defendant railroad company alleging that, against their protest, the said company had laid a railroad bed and track along Commerce street, which obstructed their trade and business and rendered their lease and buildings valueless; that these works are a trespass on their rights and have damaged them in the sum of $5000, for which they ask judgment.

Subsequently they filed a second suit, in which they averred that the railroad company was making further constructions of a similar character, the effect of which would occasion an additional damage of $5000, unless restrained, and they asked for an injunction prohibiting further construction, and for a final judgment making said injunction perpetual, and compelling the defendant to remove the works already built and granting the additional $5000 damages.

On application the defendant was permitted to dissolve the injunction on bond, of which the plaintiffs bitterly complain. We think the action of the judge was clearly legal and proper.

The petition did not even allege that the injury was irreparable; on the contrary the damage, present and prospective, was very exactly appraised in dollars and cents, and the case presents no feature of injury not readily and fully appreciable by that standard. The case falls within no recognized exception to the general rule of the Code of Practice, Article 307 authorizing the bonding of injunctions when "the act prohibited is not such as may work an irreparable injury."

It is true the Constitution, Article 156, provides that "Private property shall not be taken nor damaged for public purposes without adequate compensation being first paid." We will not say what might be the effect of this article on the right to bond if the act prohibited involved the *taking* of property, the value of which might be settled in advance. But in this case there is no *taking* of plaintiffs' property, which is not invaded or touched. The damages claimed are purely consequential in their nature, necessarily conjectural, and impossible of any accurate determination except after the construction of the road. To impose upon the parties the necessity of settling and paying such damages before proceeding with the work would be to require a manifest impossibility; and if such an injunction could not be bonded it would operate a perpetual bar to the construction of public works, which was certainly not contemplated by the Constitution.

The two cases were brought to issue by answers of defendant, setting up that their road was constructed on a public street, under lawful authority of the City of Shreveport, with due care and prudence, and denying their liability for the damages claimed. They were consolidated and tried together and culminated in a judgment against the defendant for $1500 damages, from which the latter appeals. The plaintiffs ask an amendment perpetuating the injunction and compelling removal of the road.

The evidence satisfies us that the track is laid in accordance with the permission granted by the municipal authorities, at least so far as the locality in question is concerned.

The track does not approach nearer than within twenty-six feet of plaintiffs' building, and about nine feet from his banquette. It is laid flush with the street, or nearly so, and a well planked crossing is provided.

There is no taking of plaintiffs' property and no invasion of, or trespass upon it, in any manner whatsoever.

The defendant has done nothing but what it had a legal right to do, and it has exercised that right in a proper, prudent and cautious manner, inflicting upon plaintiffs no. injury or damage except such as necessarily results from the exercise of the right.

The question primarily to be determined is, what are the nature and measure of the obligations incurred by. defendant towards plaintiff by reason of the former's exercise of this legal right.

The ordinary rule of the law exonerates a party from responsibility for damages resulting from the prudent and careful exercise of a legal right, assigning to such injury the character of *damnum absque injuriâ*. Wirges vs. R. R., 35 Ann. 646; Hamilton vs. R. R:, 34 Ann. 974.

But, in this case, the legal right passed to the defendant encumbered with the restriction imposed by Article 156 of the Constitution, above quoted, and it must discharge that. burden.

Prior to the Constitution of 1879 the organic law of this State, like that of all the States of this Union, simply provided that "Private property shall not be taken for public purposes without adequate compensation, etc." Under this rule, in absence of other special provision, a *taking* of the property was a condition precedent to liability and the measure of compensation due was the value of the property taken. Mere consequential damage to property, when the property itself was not taken, was not recoverable; and much less any damages resulting to individual owners, in the way of discomfort, inconvenience, loss of business and the like. All such injuries, inasmuch as they resulted only from the exercise by another of his legal right, were *damna absque injuriâ*.

The Article 156 of the present Constitution, in providing that "private property shall not be taken *nor damaged* for public purposes without adequate compensation, etc.," only extended its protecting shield over one additional injury and required compensation, not only for property *taken*, but also for property *damaged*.

As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damage, the measure of compensation is the diminution in the value of the property.

There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has deen done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners arising from discomfort, disturbance, injury to business and the like, remain, as they were before, *damna absque injuriâ*, particular sacrifices which society has the right to inflict for the public good.

Such is the view taken by the Supreme Court of the United States in

applying an identical provision of the Constitution of the State of Illinois. We quote from the opinion : " The jury were instructed that although the occupant may have found it difficult to haul coal out of this lot, that did not weigh upon the question as to the value of the lot in the market. * * . The scope of the charge is fairly vindicated in the following extract: ' The real question is, has the value of the property to sell or rent been diminished by the construction of this viaduct ? It may be that it cannot longer be used for the purposes of a coal yard, or for any purpose for which it has heretofore been used, but that would not be material, if it can be rented or sold at as good a price for other purposes — except that if the proof satisfies you that any of the permanent improvements put on this lot for the particular business carried on there, have been impaired in value, and you can from the proof determine how much these improvements are damaged, the plaintiff would be entitled to recover for such damage to the improvements, etc.' " The Supreme Court fully approves this charge, which contains much more of similar import. Chicago vs. Taylor, 125 U. S. 161.

Nothing in the evidence shows that the building on this lot has any exclusive adaptation to the particular business conducted therein ; and, therefore, this element does not figure in this case.

Guiding ourselves by the foregoing principles, we must disregard all the evidence and the contentions of plaintiffs in support of their claim for damages except those which go to show a diminution in the market value of plaintiffs' property, viz : the right of occupancy during the unexpired term of his lease and his building.

We have carefully read the evidence and fail to find any which would enable a jury or the court to determine any diminution in the market value of plaintiffs' property or to fix any amount therefor. A great portion of it is devoted to elements of damage which are not recoverable. The statements of witnesses on the real question of damage to value are vague, uncertain and equivocal, furnishing no basis for any estimate whatever. The jury have evidently considered matters of damage, for which defendant is not liable. In fact, the whole case has been conducted on a false theory. It may be that plaintiffs' property has been damaged within the meaning of the Constitution, but, if so, the fact and amount of such damage are not established by any evidence which would support any judgment whatever. Out of abundant caution, however, we shall make the judgment one of non-suit as to the damages.

There is no foundation for the injunction or the relief sought in that suit.

It is, therefore, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and proceeding to render such judgment as should have been rendered, it is now adjudged and decreed that the demand of plaintiffs in the injunction suit be rejected, and that his demand for damages be dismissed as in case of non-suit, plaintiffs to pay costs in both courts.