This is a suit against the City of Opelousas and its insurer by Mr. and Mrs. J.P. Barnett, Sr., growing out of an accident occurring on August 7, 1940, at about 7 p.m., on Landry Street, in the City of Opelousas, in front of the Moonlight Inn. The petition alleges that on the aforesaid date and at the aforesaid time the plaintiffs were proceeding east on West Landry Street, riding in the automobile of J.P. Barnett, Sr., which was being driven by J.P. Barnett, Jr., who was exercising all care and precaution and proceeding at a reasonable rate of speed, maintaining a proper lookout, etc., and that upon arriving at the scene of the accident, to within 8 or 10 feet thereof, the driver and petitioner, J.P. Barnett, Sr., were confronted with an unlit barrier or barricade, and that the driver thereupon veered the automobile to the left, but the front right wheel of the automobile went into the north end of an excavation which the barrier guarded and the automobile thereupon turned over, resulting in serious injuries to Mrs. Barnett. It is further alleged that the night was dark and that it was raining and, in effect, that in spite of all care and precaution it was impossible to see the barricade, of which none of the occupants had any knowledge, until within 8 or 10 feet thereof and too late to prevent the accident. It is alleged that the accident was wholly attributable to the fault and negligence of the City of Opelousas, its agents, employees and laborers, and Mrs. Barnett prays for damages due to her injuries in the sum of $17,500, and Mr. Barnett prays for damages representing medical expense incurred in the treatment of Mrs. Barnett's injuries, in the amount of $1,750.
The defendants filed exceptions of no cause or right of action, on which the following testimony was taken:
Floyd Terry testified that during the month of August, 1940, he was employed by the Louisiana Highway Commission as District Maintenance Superintendent of the Lafayette District, which includes St. Landry Parish, and that during the month of August he and his crew were engaged in repair work on Route No. 7, including the 18-foot slab of Route No. 7, which is known as Landry Street within the corporate limits of Opelousas; that at the scene of the accident the pavement had broken, due to expansion from heat, and that consequently the Highway Commission had excavated or cut out "6 x 8 long and half the width of the slab" in order to replace it with new concrete; and that they had thereupon placed a barrier or barricade where the excavation was made. He testified that the work on the slab was being done entirely by the Highway Commission and that the barricade, lights, and all equipment in connection therewith belonged to the Highway Commission and that the job was entirely in the hands of Highway Commission employees. Mr. Terry testified that in the absence of adequate protection the excavation was potentially dangerous to the traveling public, and that because of that fact they brought along the barricade and flares to protect it.
Samuel Fisher testified that he was foreman on the highway and that he was a member of the crew which was supposed to *Page 790 
fill in the excavation made in the concrete slab and he too testified that the job was entirely in charge of the State Highway Commission. He stated that he went to the scene of the accident at about 9 o'clock, some two hours after it occurred, and that at that time the barriers and flares were back in position; that the excavation and the street were flooded with water.
Harold Dunbar testified that during August, 1940, he was Street Commissioner for the City of Opelousas, and that on the night of the accident he was called by Ike Chachere, Opelousas policeman, and notified of the accident, and that he thereupon went to the scene and discovered for the first time that the Highway Commission had cut the street up. He testified that the Street Department had nothing to do with this repair work and had nothing to do with repairing the 18-foot slab, which belongs to the State, but that he did have charge of the sides or shoulders of this 18-foot slab. He states that he did not see any of the men engaged in the repair work and in fact that he had nothing to do with them.
Paul Rills testified that on August 7, 1940, he was working for the Highway Commission under Mr. Fisher, "pouring, the expansion joints of the pave"; that he heard about the accident the day after it happened and that the night after it happened he was placed on guard duty at the excavation as a precaution against further accidents; that the day after the accident there were about two feet of water at the scene; that he stayed and watched for two nights after the accident; and that he acted as night watchman as an employee of the State Highway Department.
On this testimony the trial judge reached the conclusion that no official or employee of the City of Opelousas had anything to do with the repair work and that Landry Street had been designated by Act No. 95 of 1921, Ex.Sess., as amended, as Route No. 7, and that the Legislature had made it the duty of the Department of Highways, by Act No. 414 of 1938, to maintain said route, and that consequently it appeared to him that the City of Opelousas and its insurer were erroneously sued, and he thereupon rendered judgment sustaining the exception of no right of action and dismissing plaintiffs' suit at their cost. Plaintiffs have appealed from that judgment.
The main contention of the plaintiffs is that it is the duty of the city "to exercise full jurisdiction in the matter of streets, * * * to repair, maintain, pave, sprinkle, adorn and light the same", in accordance the language of the city Charter (Section 15, Twenty-second paragraph, Act No. 136 of 1898), and that the Highway Commission, as a result of legislative enactment placing the obligation of maintaining the street on it, was for that particular purpose "an independent contractor in that it performs work on the streets for the city, the owner thereof". In other words, they contend, in effect, that the city did not lose its obligation to maintain the street in a safe condition by reason of the fact that the repair work was being done by the Highway Commission. The weakness of that argument is the fact that the city is a creature of the Legislature and it would seem that if the Legislature can create, it can also take away, and when it made a state highway of the 18-foot slab and thereafter placed the burden of maintaining that slab on the Highway Department, it thereby removed the obligation and duty of the City of Opelousas in so far as the maintenance of that slab was concerned, and placed the duty and obligation on the State Highway Department. It would seem that the State Highway Department should be responsible for all state routes, regardless of their location, and the mere fact that the route happens to be in the corporate limits of the city does not vest supervisory power in the city over work specially delegated by the Legislature to the Highway Department. Unless it be held that it does have such supervisory power, it does not seem that the city can be charged with negligence.
The rule of law governing this case is succinctly stated in 38 Am.Jur., page 291, Sec. 595 under the title of Municipal Corporations, as follows: "The rights and powers of a municipality are subject to the will and control of the Legislature, and it lies within the power of the Legislature to take the control of some municipal department out of the hands of the municipality and turn it over to some board of state officers. When this has been done, upon rudimental principles of justice the municipality cannot be held liable for the negligence of such officers, regardless of the nature of the function which they are administering." *Page 791 
This rule of law was approved by our Supreme Court in the case of Harrison v. Louisiana Highway Commission et al., 191 La. 839,186 So. 354.
Plaintiffs cite several cases involving WPA and other government projects which do not seem to apply to the case at bar, for the reason that these projects are conducted by agreement with the city and the city is not thereby relieved of its jurisdiction as in the case at bar.
Plaintiffs also rely on the case of Rome v. London Lancashire Indemnity Co. of America, La.App., 169 So. 132, in contending that even if the city is liberated, its insurer cannot escape liability. The Rome case is to the effect that the insurer could not interpose the special defense of its assured, New Orleans City Park Association, of being a public body and by reason of public policy not being subject to tort liability. In the instant case the insurer has not interposed any such special defense. The defense of the insurer is that its assured was guilty of no negligence because the assured, City of Opelousas, had nothing whatsoever to do with the highway excavation which caused the accident. That is certainly an ordinary defense which the insurer can make. The cited case is not apposite.
The judgment of the trial court maintaining defendants' exception of no right of action and dismissing plaintiffs' suit is affirmed.