83 So.2d 476 (1955)
Ida A. BRITT, Plaintiff-Appellant,
v.
CITY OF SHREVEPORT, Defendant-Appellee.
No. 8418.
Court of Appeal of Louisiana, Second Circuit.
November 2, 1955.
Rehearing Denied November 29, 1955.
*477 Bullock & Bullock, Shreveport, for appellant.
William L. Murdock, James W. Hammett, Shreveport, for appellee.
GLADNEY, Judge.
This is a suit by the owner of a lot, Mrs. Ida A. Britt, against the City of Shreveport for damages resulting from the change or alteration of the grade on two streets which abut Lot 31 of Oakland Subdivision. For a cause of action it is alleged that by reason of the excavation and lowering of the streets, her property is now inaccessible and has sustained a diminution in value of $1,500. In its answer, the municipality admits the alteration of the grades of the streets as alleged but denies the lot has sustained diminution in value. After a trial on the merits, judgment was rendered awarding damages in the sum of $150, and from this judgment Ida A. Britt only has appealed. There is no answer to the appeal.
The cause of action herein asserted arises not in tort, but rests on constitutional and statutory grounds. Article I, Section 2 of the Constitution of 1921-LSA provides:
"No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." (Emphasis supplied.)
The provision first extending our law to compensate damages to property sustained by reason of public usage was incorporated in the Constitution of 1879, Art. 156, and was subsequently retained in succeeding Constitutions of 1898, 1913, and 1921. Prior to inclusion in a Louisiana Constitution the same principle was enunciated in the Code Napoleon, Article 545, which declared that no one can be compelled to part with his property, unless by reason of public utility and on consideration of an equitable and previous indemnification. This article was incorporated in the Civil Code of 1808, 1825 and 1870. Article 497 of the Civil Code of 1870 added by way of explanation: "By an equitable indemnity, in this case, it is understood not only a payment for the value of the thing of which the owner is deprived, but a remuneration for the damages which may be caused thereby." Article 2633 of the LSA-Civil Code further declares that the basis for determining the value of property to be expropriated shall be the true value which the land possessed before the contemplated improvement was proposed, and without deducting therefrom any amount for the benefit derived by the owner for the contemplated improvement or work. Although this Code Article does not expressly include property damaged by reason of public utility, yet the courts of this state have so construed it, and Act No. 165 of 1916 as now incorporated in the Revised Statutes of 1950, LSA-R.S. 33:3742, provides that in suits against *478 municipal corporations for damages resulting from a change or alteration of the grade of streets, the damages to be paid to the owners of abutting property shall be determined after deduction has been made of all special benefits and the enhancement in value of the particular property so damaged by the public work. In McMahon v. St. Louis, Arkansas and Texas Railroad Company, 1889, 41 La.Ann. 827, 6 So. 640, 641, the Supreme Court of Louisiana, speaking through Judge Fenner, said:
"Prior to the constitution of 1879 the organic law of this state, like that of all the states of this Union, simply provided that `private property shall not be taken for public purposes without adequate compensation,' etc. Under this rule, in absence of other special provisions, a taking of the property was a condition precedent to liability, and the measure of compensation due was the value of the property taken. Mere consequential damage to property, when the property itself was not taken, was not recoverable, and much less any damages resulting to individual owners, in the way of discomfort, inconvenience, loss of business, and the like. All such injuries, inasmuch as they resulted only from the exercise by another of his legal right, were damna absque injuria.
"The article 156 of the present constitution, in providing that `private property shall not be taken nor damaged for public purposes without adequate compensation,' etc., only extended its protecting shield over one additional injury, and required compensation, not only for property taken, but also for property damaged. As in the case of a taking the measure of compensation is the value of the property taken, so in the case of damages, the measure of compensation is the diminution in the value of the property.
"There is no warrant for extending the liability one whit beyond this. We are simply to inquire what damage has been done to the property, i. e., to its value for rental and sale. Mere consequential injuries to the owners, arising from discomfort, disturbance, injury to business, and the like, remain, as they were before, damna absque injuria, particular sacrifices which society has the right to inflict for the public good."
The rule so stated has been firmly established in our jurisprudence. See: Jarnagin v. Louisiana Highway Commission, La.App. 1942, 5 So.2d 660; Carter v. Louisiana Highway Commission, La.App.1942, 6 So.2d 159; Housing Authority of Shreveport v. Green, 1942, 200 La. 463, 8 So.2d 295; Texas Pipeline Company v. National Gasoline Company of Louisiana, Inc., 1943, 203 La. 787, 14 So.2d 636; Schneidau v. Louisiana Highway Commission, 1944, 206 La. 754, 20 So.2d 14.
Manning v. City of Shreveport, 1907, 119 La. 1044, 44 So. 882, 13 L.R.A.,N.S., 452, is a case which has been repeatedly cited with approval by later decisions of the Supreme Court. It involved damage to property by reason of grading an adjacent street. There it was held the necessary cost of changes and alterations of improvements and premises in order to preserve the same and to conform to the new grade, was an element of damages which should be considered.
By reason of the changes in grade of Martha and Jordan Streets adjacent to plaintiff's property, a portion of the right-of-way of said streets was excavated and reduced below the original grade and level of plaintiff's property. Lot 31 of the Oakland Subdivision is a corner lot fronting forty feet on the west side bounded by Martha Avenue, and 125 feet on the north, abutting Jordan Street. The east side of said lot is adjacent to a 20 foot alley which extends from Jordan Street beyond the width of the lot. The alley does not appear to have been utilized by those whom it was intended to serve. Situated on the lot is a frame dwelling measuring approximately 14 feet by 40 feet. It is occupied by a Negro family.
We reproduce below Exhibit D-1, a topographic map which correctly depicts the lot and its improvements, the two adjacent streets, and the extent to which the street grades were lowered.
*479 
*480 Through reference to said exhibit, certain facts are readily discernible. The map shows that the depth of cut on Jordan Street averages 8.6 feet, being 8.9 feet at the east end of the lot and 8.3 feet at the west end. Along Jordan Street the top of the bank or slope is 9 feet distant from the property line at the northeast corner and 7.6 feet away from the line at the northwest corner of Lot 31. On Martha Avenue we find the street grade was lowered from 3.1 feet on the south side to 5.4 feet on the north side of the lot. Along Martha Avenue the northwest and southwest corners of the lot are respectively 17.6 feet and 15 feet distant from the top of the slope. Plainly, therefore, plaintiff's lot is more than 7 feet distant from the excavation on Jordan Street and more than 15 feet way on Martha. Such undisturbed portion of the street constitutes a protecting wall against erosion of the west and north sides of Lot 31. Offered in evidence are photographs showing erosion on the slope of the embankment along Jordan and Martha Streets and counsel assert that this is an element of damage. We do not think so. The city engineer testified without contradiction that drainage on Lot 31 was toward the southwest and away from the two embankments. Therefore, the only washing which would occur on the two slopes must result from rain falling directly across the slopes. There should be no resulting erosion on Lot 31 within the foreseeable future.
The effect of the lowering of the street grades on the west and north sides of Lot 31 upon the value of said lots and their improvements presents a more serious question. The Exhibit D-1 reproduced above shows the present lot is not served with a driveway and testimony was given that hardly one out of fifty of the colored residents in the neighborhood has a driveway. We know from experience, however that one of the elements of value attached to residential property is ease of ingress and egress. Though the present tenant does not demand a driveway, the next tenant could. A drive into the 20 foot alley from the north side of the lot from Jordan Street, is entirely possible, but surely such an entrance would be difficult to use and expensive in its construction. In order to have access from Martha Avenue the driveway would necessarily require a grade of 4.4 feet. The cost of such a driveway would necessarily be increased by reason of the lowering of Martha Avenue, and would have some effect upon the present and future market value of said property. At least to this extent, plaintiff has suffered some loss.
Properly recognizing that diminution in value is the measure of damages for any loss sustained by plaintiff from the lowering of the grades of the two streets, counsel for both sides called upon witnesses experienced in property values to prove the difference, if any, in the value of said property before and after the streets were lowered. We will not review their testimony in detail as we are in accord with the views of the judge a quo, who summarized the testimony, saying:
"Plaintiff offered two witnesses as to the value of the property, both of whom valued the lots prior to the excavation at $800.00; one valued the house at $900.00 and the other stated the value to be $800.00. Both state that the present value of the house and lot is from $800.00 to $900.00. Defendant's witnesses testified that the value of the property prior to the excavation was approximately $1,500.00 and that the property could now be sold for more than that amount, hence they did not consider that plaintiff had been damaged to any extent. These two witnesses discussed the value of colored rent property, and stated that as long as you could receive $4.00 to $4.50 per week for colored rent property, it maintained its value. The evidence shows that plaintiff's house was built in 1945 and had been rented from that time to the present date at $15.00 per month. There was no evidence of previous sales or subsequent sales in that vicinity, hence there is no evidence to indicate that there has been any change in the `sale price' of the property, and since it is admitted that the property is rented at the same price that it was rented for *481 prior to the excavation, there has been no diminution in rental value."
Although not entirely in agreement with the reasons given for the award made in favor of appellant, we believe the judgment does adequately compensate appellant for any damages sustained by the lowering of the streets adjacent to her property. The judgment from which appealed is, therefore, affirmed at appellant's cost.