*466 SANDERS, Justice
(dissenting).
I concur in the award for structural damage. In all other respects I record my dissent.
Under Article I, Section 2 of the Louisiana Constitution, the test for recovery of damages when there has been no physical invasion of the property is whether the damages to the owners are special, as distinguished from those suffered by the public generally. See Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; McMahon v. St. Louis, A. & T. R. Co., 41 La.Ann. 827, 6 So. 640; State, Through Department of Highways v. Terry, La.App., 194 So.2d 144; Jarnagin v. Louisiana Highway Commission, La. App., 5 So.2d 660.
Contrary to the factual findings of the majority, the record reflects that the Interstate Highway construction completely eliminated that portion of Eugene Street north of the Reymond property. For access to the property, a service road was constructed under the Interstate, forming a cul-de-sac. The Interstate Highway, a wall of concrete higher than the residence and very close to it, left the property physically isolated from the general residential neighborhood.
Both lower courts found the plaintiff had established special damages in that because of limited access and isolation, the market value of the property had depreciated. Two realtors attested to the diminution in value. In fixing the amount at $6,250.00, the courts relied upon the testimony of Mr. Verdie Reece Perkins, a realtor of outstanding reputation and great experience. I concur in this finding.
Although reliance upon Article 667 of the Louisiana Civil Code is unnecessary for recovery in the present case, I must note that the language of the majority opinion unsettles the prior jurisprudence construing this Article. The majority advances the opinion that Article 667 applies only to buildings, edifices, structures, levees, and other structural changes in and on the land that produce damage to the neighbor. It restricts the Article to only one category of estate use, undermining the assumption that the Article serves as a statutory base for the sic ufere doctrine.[1] In so doing, the majority repudiates the rationale of the following decisions: Devoke v. Yazoo & M. V. R. Co., 211 La. 729, 30 So.2d 816 (refueling of locomotives causing smoke) ; Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (pile driving); Gulf Insurance Co. v. Employers Liability Assur. Corp., La.App., 170 So.2d 125 (pile driving) ; Hauck v. Brunet, La.App., 50 So.2d 495 (pile driving); Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845 (subterranean explosion in oil exploration) ; Wright v. Superior Oil Com *468 pany, La.App., 138 So.2d 688 (subterranean explosion in oil development); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (aerial dusting of crops with insecticides); Trahan v. Bearb, La.App., 138 So.2d 420 (aerial dusting of crops with insecticides).[2] See also Dainow, Property, 21 La.L.Rev. 294-295; Stone, Tort Doctrine in Louisiana: The Obligations of Neighborhood, 40 Tul. L.Rev. 701.
The sole basis for repudiating the rationale of these decisions is the example of “works” given by Domat, a French legal scholar whose writings contributed substantially to the Code Napoleon. It is to be noted, however, that the illustrations used by Domat have been made the subject of specific articles in the Louisiana Civil Code. See LSA-C.C. Arts. 691-698. It seems doubtful that these examples were designed as a limitation upon the neighborhood concept.
Writing in 40 Tul.L.Rev. 701, 705-706, Dr. Stone states:
“It is obvious that the passages cited from the Roman law by Domat list the type of ‘works’ which were the most usual sources of damage to neighbors in that day. Domat himself gives as examples a roof which protrudes over and discharges water upon a neighbor’s land, the failure to leave proper distances between structures, the placing of stoves and fireplaces against: a common wall; but he quite wisely continues by saying that with regard to those works by which damage might result and which one ought not to be able to do except at a certain distance from the neighbor and with proper precautions, these ought to be governed by rules laid down by the customs and usages of the place. Louisiana has made these more precise by articles 692 through 695.
“The important thing is that these are only illustrations of the type of ‘works’ which, at the time of the adoption- of the Code could be expected to damage one’s neighbor. The listing was never intended to be exclusive. The list grows as the society develops. The world of the Romans or that of Domat did not contemplate the use of dynamite in conducting geophysical explorations, the use of pile-driving equipment to prepare a foundation for buildings, the operation, of jet-planes over residential areas, the dusting of crops by airplanes, the operation of huge factories, the storing or use of radioactive materials. As man’s ingenuity in, creating works upon his lands and in conducting operations thereon has increased, so has his capacity to pause harm to his neighbors, with the corresponding necessity for regulation in the interest of -'the good of all!” - •
*470 Dr. Dainow also writes:
“Article 667 of the Civil Code provides for the legal servitude that one property may not be used in such a way as to cause damage to another. There are also principles of tort law which impose liability on a landowner for damage caused to another — sometimes based on fault or negligence, sometimes as a strict liability. This multiplication of devices permits the court to have a greater range of flexibility in the handling of specific cases and in directing the development of the law concerning responsibility where both damage and causality are proven.” [21 La.L.Rev. 294].
For these reasons, I would defer a decision as to Article 667 until its construction is squarely presented. At that time, all pri- or decisions can be examined. If the conclusion is the same as that suggested in the majority opinion, then the prior decisions should be either reconciled or expressly overruled. In the present case, the Court has merely swept them under the rug.
For the reasons assigned, I respectfully dissent.
HAMLIN, SANDERS, and SUMMERS, JJ., dissent from the refusal of a rehearing in this case.

. Only one of these decisions, Craig v. Montelepre Realty Co., was cited in the majority opinion. (Footnote 7.)