O’NIELL, Chief Justice.
 

 This is a suit for the value of property taken for a public purpose and for damages to the remaining property. The purpose for which the property was taken was to obtain dirt for a roadbed for the construction of a public highway. The Highway Commission bought a comparatively-small area of'ground adjoining the-land of the plaintiff for the purpose of ob
 
 *757
 
 ■taining dirt to construct a highway; and the plaintiff contends that in the digging of the borrow pit to’ get the dirt the Highway Commission unintentionally en'croached upon the plaintiffs land to the extent of about 14 feet for the full length of the borrow pit — about 440 feet. The pit measures 165 feet by 440 feet and has an average depth of
 
 12y2
 
 feet. The water in the pit is approximately
 
 7
 
 feet deep.
 

 The plaintiff contends that the borrow pit is a nuisance and impairs the value of his adjoining land. He complains that there are no barriers or guards to prevent "persons from falling into the pit; that ‘there is no protection against the sloughing of the banks; that there is no outlet or inlet to the pit and hence that the stagnant water is a breeding place for mosquitoes and noisy creatures, and is an abiding place for scum and putrid vegetation, emitting noxious odors; and that in that way the abandoned borrow pit has reduced the sale value of the plaintiff’s remaining property. He prayed primarily that the Highway Commission should be . compelled by mandatory injunction to abate the nuisance by filling up the pit; and in the alternative he prayed for $900 compensation for the trespass upon his land to the extent of the 14 feet for the length of 440 feet; and for $7,840 for damages to his remaining property.
 

 The judge who heard the case held that the borrow pit did encroach upon the plaintiff’s land to the extent of 14 feet and for the distance of 440 feet, and he allowed the plaintiff $250 as the value of the land taken. He rejected the plaintiff’s demand for a mandatory injunction to compel the Highway Commission to fill up the 'pit, but gave the plaintiff a judgment for $2,250 damages to his remaining land. The Highway Commission is appealing ■from the decision. The plaintiff, answering the appeal, prays again for the mandatory injunction, and in the alternative for an increase of the allowance of $250 to -.$720 for the value of the encroachment upon his land, and for an increase of the judgment o.f $2,250 to $2,700 for damages to his remaining land.
 

 The dispute as to whether the borrow pit encroaches upon the plaintiff’s land results from the fact that his chain of title, as well as that of the Highway Commission, extends back to a deed dated July 18, 1877,- by which a man named Isaac Davis acquired both tracts according to a survey made by L. H. Pilie, surveyor, dated May 8, 1837, and that the map of the Pilie survey has been lost for many years, and there is no copy of it in existence. The boundary line in dispute is the line dividing lot 93, owned by the plaintiff, from lot 95, owned by the neighbor from whom the Highway Commission bought the land on which to dig the borrow pit. The plaintiff’s location of the line, which shows the encroachment of the borrow pit to the extent of 14 feet on his land, is supported by a survey made by a reputable surveyor and civil engineer. The survey is based upon what are considered trustworthy monuments and conforms with the physical boundaries of the many other.
 
 *759
 
 so-called lots, or narrow tracts of land, composing the large area once belonging to Isaac Davis. Perhaps the most important of these monuments, or actual boundaries, is a row of trees, 56 in- number and forming a straight line dividing two adjacent lots, numbered 89 and 91, for a distance of 750 feet. It appears that this line of trees has been recognized as a boundary line between the two lots for a great many years. Two other reputable surveyors testified .from surveys made by them that the borrow pit did not encroach upon the plaintiff’s land, and in fact that there was a considerable space between the western boundary of the borrow pit and the eastern boundary of the plaintiff’s land. One of these surveyors placed the western boundary of the borrow pit 29 feet east from the eastern boundary of the plaintiff’s land at the southern end of the borrow pit, and 21 feet east from the eastern boundary of the plaintiff’s land at the northern end of the borrow pit. There is a slight discrepancy in these distances as given by the testimony of the other surveyor who testified for the Highway Commission. One of them admitted that his survey of the eastern boundary of the plaintiff’s land would disturb the presently established boundaries of all of the many lots in the large area formerly belonging to Isaac Davis. We do not find any convincing or substantial reason why we should disagree with the trial judge in his conclusion that the borrow pit does encroach upon the east side of the plaintiff’s lot to the extent of approximately 14 feet. Nor could we give a substantial reason for disagreeing with his estimate of the value of the 14 feet of land for the length of 440 feet. The 'evidence on this subject of course is conflicting, but'it supports the conclusion of the trial judge as well as, if not better than, it would support a judgment for a greater or less sum.
 

 The plaintiff’s primary demand for a mandatory injunction to compel the Highway Commission to fill up the borrow pit is not well founded. The purchasing of the land for the purpose of obtaining the dirt was authorized by Act No. 108 of 1926. The act provides that whenever it is necessary in the opinion of the Highway Commission to acquire dirt for use in-constructing, repairing or maintaining a state highway, the Commission may, by grant, purchase or expropriation, acquire sufficient land from which the dirt can be obtained for constructing, repairing or maintaining the highway. But the statute, of course, does not — and could not — exempt the Highway Commission from the obligation imposed by Section 2 of Article I of the Constitution, to pay adequate compensation for property taken or damaged for the public purpose of obtaining dirt by the digging of a borrow pit, to construct, repair or maintain a public highway.
 

 The Highway Commission contends that the borrow pit is not a nuisance to the plaintiff, because his land is located in a very low and uninhabited area, and that, even though the pit might become hereafter a nuisance to some future occupant of the adjacent land, the pit does not damage the land itself. There is evidence that the State Board of Health keeps the
 
 *761
 
 water in the pit stocked with minnows that live on mosquito larvae and thereby prevent the breeding of mosquitos in the borrow pit. There is evidence also that the area in which the pit is located is so infested with mosquitos for many miles around that the percentage of mosquitos which the borrow pit might add would not be noticeable. It is likely also that the description of the pit as an abiding place for filthy scum, for decaying vegetation, noisy frogs, venomous reptiles, and sundry other noxious or objectionable creatures, is exaggerated in the plaintiff’s fears and apprehensions, as well as in the allegations of his petition. But there is no doubt that the very presence of the abandoned pit adjacent to the plaintiff’s land, with the dangers incident to its steep banks, its depth of 12% feet, and its content of 7 feet of stagnant water, would be a deterrent in any prospect for a sale of the adjacent land. And the test, after all, as to whether a nuisance in a case like this, is an injury to the adjacent land itself, or is only a nuisance to an occupant of the land, is whether the nuisance impairs the commercial value of the adjacent land. Helmer v. Colorado Southern, N. O. & P. R. Co., 122 La. 141, 47 So. 443; Louisiana Highway Commission v. Guidry, 176 La. 389, 146 So. 1; Harrison v. Louisiana Highway Commission, 191 La. 839, 186 So. 354; Texas Pipe Line Co. v. National Gasoline Co., 203 La. 787, 14 So.2d 636. In the latter case it was said that the argument for the Pipe Line-Company that there was no real danger, but only a fear of danger resulting from the maintenance of a “big inch” high-pressure' gasoline pipe line under and across the plaintiff’s land, was of no importance because it was the fear of the danger that lessened the sale value of the land through which the pipe line passed. In the present case the evidence sustains the plaintiff’s contention that the abandoned borrow pit adjoining his land impairs the sale value of the land at least to the extent of the $2,250 allowed by the trial judge. We find no substantial reason for increasing this amount, as prayed for in the plaintiff’s answer to the appeal of the Highway Commission.
 

 One of the defenses set up by the Highway Commission in its answer to the suit was that the plaintiff waived and abandoned any claim that he might have had by reason of the digging of the borrow pit beside his land. This plea is founded upon a clause in the act of donation of the right of way by the plaintiff to the Highway Commission for the construction of the new highway across his land. The clause provides that the grantor waives and abandons all claims against the Commission for damages on account of the exercise of the privilege granted in the deed for the right of way. That waiver could not have had reference to the damages afterwards caused by the digging of the borrow pit along side of the plaintiff’s land, because the Highway Commission had not even bought the land, on which it afterwards dug the borrow pit, at the time when the plaintiff donated the right of way for the construction of the highway. It is contended that the plaintiff must have known, at the time when he granted the right of way, that the Highway Com
 
 *763
 
 mission intended to dig a borrow pit where it was afterwards dug. In support of that argument it is pointed out that, in the description of the right of way in the act of donation, reference is made to certain maps on file in the office of the Highway Commission; and it is argued that the plaintiff must have known that one of these maps showed where the borrow pit would be made, because he was a member of a delegation of landowners who visited the office of the Highway Commission for the' purpose of inducing the Commission to construct the highway over the lands of the members of the delegation; and it is argued that the plaintiff while in the office of the Highway Commission must have observed that at least one of the maps, afterwards referred to in the deed for the right of way, showed the location of the proposed borrow pit. The evidence does not prove that the plaintiff knew of the proposed location of the borrow pit at the time when he made the donation of the right of way for the new highway. On the contrary, the evidence leaves no doubt in our mind that the plaintiff had no thought of the proposed location of the borrow pit at the time when he gave the Highway Commission the right of way for the construction of the new highway.
 

 The Commission contends finally that the construction of the new highway across the plaintiff’s land was of special benefit and advantage to his land, and that this benefit and advantage should offset any damage that might have been done afterwards by the digging of the borrow pit beside his land. The answer to this is that it was recited in the deed by which the plaintiff granted the right of way for the highway that the grant was made, in consideration of the benefits, uses and advantages accruing to the grantor by reason of the location of the highway across his land. The Highway Commission did not acquire the land on which to dig the borrow pit until nearly eight months after it had acquired from the plaintiff the right of way for the construction of the highway across his land. It was of no special benefit or advantage to the plaintiff thereafter to have the borrow pit dug beside his land. As far as the benefits or advantages resulting to his land by the construction of the highway were concerned, .they were compensated by the granting of the right of way, and ■ therefore should not be offset also against the plaintiff’s claim for damages for the subsequent digging of the borrow pit beside his land.
 

 Our conclusion is that the judgment appealed from is correct.
 

 The judgment is affirmed.
 

 FOURNET, J., concurs,.
 

 PONDER, J., takes no part.
 

 HAMITER, J., concurs in part and dissents in part.