94 So.2d 505 (1957)
EAST BATON ROUGE PARISH COUNCIL, Plaintiff-Appellant,
v.
Earl R. KOLLER, Defendant-Appellee.
No. 4365.
Court of Appeal of Louisiana, First Circuit.
March 25, 1957.
Rehearing Denied May 2, 1957.
*506 R. Gordon Kean, Jr., John V. Parker, Baton Rouge, for appellant.
White & May, Baton Rouge, for appellee.
TATE, Judge.
This is an expropriation suit. Plaintiff parish council appeals from an award to defendant landowner of $750 for a fifty-foot servitude for drainage purposes. The sole question for our consideration is whether this award should be reduced; for defendant-appellee's answer requesting increase of the award to $1,100 was not filed until after oral argument, and "in order to have an answer to the appeal considered, it must be filed before argument. Article 890, Code of Practice," Ford v. Leonard Truck Lines, La.App. 2 Cir., 26 So.2d 309 at page 314; cf., Middleton v. Rheem Mfg. Co., La.App. Orl., 34 So.2d 271, Goynes v. St. Charles Dairy, Inc., La. App. 1 Cir., 197 So. 819.
Plaintiff council's expropriation is in connection with its project to widen and deepen White's Bayou throughout the entire northern and eastern end of East Baton Rouge Parish, in order to afford better drainage to this area. The District Court granted the prayer awarding the council a servitude over the rear fifty feet of defendant Koller's property, which borders White's Bayou. The evidence shows that the council presently intends to include the rear 25' only within the excavated, deeper channel, and to use other 25' only for occasional access purposes to clear the channel.
To be excavated and removed with the rear 25 feet of Koller's lot were a large levee or hill formed by dirt taken from the present channel (consistently referred to as a "spoil bank" by plaintiff's witnesses) and two shade trees: namely a large, 36-inch base oak tree, and a 10-inch elm. (These were the only trees on defendant's plot.) Koller testified that these made a picturesque scenic backdrop which greatly added to the attractiveness of his residential property (and in this he is corroborated by the photographs furnished as evidence by both parties, as well as by his expert witnesses), which was one of the principal reasons he had purchased the lot in question. He also testified that his 8-year-old boy and the children of the neighborhood had a natural playground at the base of the levee and in the shade of the great oak tree, and we note that the photographs show a tree-house, swinging tire, and climbing ropes, in mute corroboration of this testimony. The levee forms a natural barrier between the rear of his lot and the present bayou, and Koller feared he would need a fence to replace this barrier in order to protect his child and the other children playing, since after the expropriation his property would slope abruptly into the enlarged bayou.
Defendant's first expert realtor witness, Warren Munson, corroborated that such consequential loss affected the commercial value of residential lots; without considering such damages to the rest of the property, he valued the rear fifty feet to be taken (including trees) at $500 in all. The other expert realtor testifying for Koller, Kermit Williams, estimated the total value of the 50 feet to be taken for the servitude at $750 including trees, also admitting without evaluating same the possible economic damage in sales value to be caused by the deeper channel, unprotected by the natural barrier of the levee.
Because Williams used the cost of planting two much smaller trees from a tree *507 nursery as a guide in arriving at the valuation of the loss to be caused the property by removal of the two present trees, plaintiff urges that the District Court erroneously arrived at its award by valuing the trees independently of the land, rather than only as a factor in determining the value as a whole of the land on which located, citing State of Louisiana through Department of Highways v. Glassell, 226 La. 988, 77 So.2d 881 (syllabus 6), which ruling however is partially based upon the technicalities specifically pertaining to LSA-R.S. 48:218 of the act relative to expropriation for State highways.
Construing Williams' testimony as a whole, we feel that his valuation was of the land to be taken including the trees thereupon; and considering this testimony, together with that of defendant and his other expert realtor, we cannot say the District Court erred in its award to defendant of $750 for the property expropriated (including the trees situated thereupon) and the damage to (i. e., the loss of value of) the remainder of defendant's lot caused by this taking. While consequential damages to the land not taken such as loss of esthetic values or additional discomfort are not per se compensable, they are properly considered in determining the expropriation award if they be such as diminish the commercial value of the remaining property. Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14, Louisiana Power & Light Co. v. Dileo, La.App. 1 Cir., 79 So.2d 150.
Plaintiff's two expert witnesses appraised the land actually to be used by the servitude as worth $200, and the trees as adding only $50 value to the strip. The District Court was not unduly impressed by their estimation of the slight commercial worth over a completely treeless plot of having two large shade trees on a residential lot in a town neighborhood; we think the other evidence in the record, including the photographs, supports the District Court's higher evaluation.
Plaintiff parish council finally urges that the award should be reduced by disallowing any damages to the property not taken, since even defendant landowner's witnesses agree that the project will cause defendant's lot to increase in value because of the better drainage afforded it and the lesser danger of flooding. That is, it is urged that the damages to the remaining land should be offset by the benefits accruing from the drainage project.
But the testimony is uncontradicted that such benefits as will accrue will also accrue to all other property in the area, whether or not abutting the improvement. These are general benefits to all property concerned, not special to Koller's property.
"General benefits [resulting from construction of the work] are those which are shared alike by all property owners in the neighborhood or community. Such damage as a property owner may sustain as a result of the construction and use of a public work cannot be offset by these general benefits. The reason is that the citizen whose property is taken cannot be compelled to bear more of the cost of the public improvement and general benefits resulting therefrom than is borne by other property owners whose property is neither taken nor damaged for the public purpose," Louisiana Highway Commission v. Grey, 197 La. 942, 2 So.2d 654 at page 660; Oleck, Damages to Persons and Property, Section 225; 29 C.J.S., Verbo Eminent Domain, § 183b, p. 1064.[1]
For the above and foregoing reasons, the judgment of the District Court is affirmed.
Affirmed.
NOTES
[1] While there is some authority that the appreciation in value arising when the untaken property is specially benefitted by the public improvement may be used to offset the consequential damages resulting therefrom to this untaken remainder, this appreciation may not be considered to offset the value of the land actually appropriated, see, e. g., Louisiana Highway Commission v. Giacone, Orl., 19 La. App. 446, 140 So. 286.