HERGET, Judge.
From a judgment of the Trial Court .in an expropriation proceeding which awarded the Defendant $14,847.90, fixed the expert fees of two witnesses at $200 each, assessed same as costs, together with the costs of court to Plaintiff, Plaintiff took a devolutive appeal to this Court. Defendant answered the appeal praying that the judgment appealed from be amended by increasing the amount allowed appellee from $14,879.90 to $16,701.90.
Louisiana Highway No. 57 known as the Ashland-Dulac Highway was a shell road extending generally in an easterly-westerly direction which the Department of Highways determined to replace with a concrete slab and improve the highway by removing unnecessary curves and extending the shoulders. To accomplish this purpose it became necessary to expropriate *601 0.275 acres of Defendant’s property fronting 437.11 feet on the highway by an irregular depth in order to widen the road. Prior to the expropriation Defendant’s home which was located on the northern side of the road was 40 feet from the northern edge of the shell road and after the expropriation it was some 27 feet from the edge of the concrete slab but the right-of-way extended to some 8 feet from the nearest corner of Defendant’s home which rested catercornered to the roadway. In the property which was taken there was some shrubbery and a tenant house and the Trial Judge in his written reasons for judgment assessed damages sustained by Defendant:

Plaintiff had deposited in the Registry of the Court the sum of $4,300.90 representing their evaluation of the property expropriated of $2,300 for damages for property expropriated and $2,000 for severance damage.
It appears that when the representative of the Department of Highways first contacted the Defendant and expressed their desire to obtain the additional land necessary to widen the road he, at that time, offered to give them the necessary additional land provided that they would take same from the southern side of the old road and thereby not encroach upon the part of his property which formed his front yard. His offer was transmitted to the engineering department of the Department of Highways and though it appears from the record that the Defendant was highly offended by the failure of the Department to accept his proposal, in fact attributed such decision to arbitrary action on the part of the Department, it appears from a reading of the testimony of Mr. Lirette, who testified that he was responsible for the acquisition of all rights-of-way and real properties required for the construction and maintenance of all highways embraced within the state highway system that Mr. Bourg’s generous conditional offer to donate the necessary additional right-of-way was not rejected because of arbitrary action on the part of the Department of Highways but resulted from a desire on the part of the engineers to provide the best and safest route. He said at page 137 of the transcript of testimony, page 207 of this transcript:
“A. The engineer didn’t want to introduce any more curves in that alignment. It would have moved the highway some nearer to the bayou, and, of course, you can’t effect a change in alignment that would introduce two reverse curves within a distance of some 5 or 600 feet apart and that would have been necessary to accede to Mr. Bourg’s request as to the line. And then in addition by that time the department had completed the acquisition of practically all of these properties and any line which would have necessarily extended beyond the limits of Mr. Bourg’s property it would have necessitated reopening negotiations with other property owners who were satisfied obviously with the alignment as they granted rights of way. * * * »
And at page 138 of the testimony, 208 of the transcript where he said:
“ * * * but when you compromise design and alignment to facilitate the acquisition of properties you invite undesirable and hazardous conditions, but you could have shifted that alignment almost any way in that area, but you would have invited hazards that were not condusive (conducive) to the safety and convenience of the travel-ling public, and, after all, that’s the Highway Department’s prime responsibility to construct highways in a mode *602 condusive (conducive) to the safety and convenience of the travelling public.”
It therefore is apparent that the refusal to accept Defendant’s offer of a donation of a strip of land conditioned on a change in the line of the proposed new highway was based only upon the Highway Department’s desire to construct this highway to be more conducive to the safety and convenience of the traveling public.
In this Court Plaintiff does not take exception to the award by the Trial Court of damages in the sum of $2,347.90 for the property expropriated, shrubbery and tenant house, but concentrates their opposition to the judgment on the question of the amount of severance damage in the sum of $12,500 awarded by the Trial Court.
In arriving at this award, the Trial Court accepted the testimony of two experts called by Defendant, Messrs. Charles D. Chauvin and Emmett M. Glynn, to the effect that the home of Defendant which he himself had built in 1913 and which had subsequently been renovated and repaired was worth the sum of $12,500 and the placing of the road and right-of-way in such close proximity to this house had made it valueless, so that the entire value of the house had been lost to Mr. Bourg. In his testimony, Mr. Charles D. Chauvin related that he was a realtor in Houma, Louisiana and from the qualifications attributed to him and accepted by the Court as well qualified as a. expert witness, said that even though the house at its closest point was, after the taking, located 27 feet from the edge of the highway, it was only 8l4 feet from' the right-of-way.. He further testified that a ditch which had been placed in the right-of-way for drainage purposes, which the evidence shows to be to a depth of 2 feet with reclining grassed banks was not usable by Defendant for the shrubbery which he had planted thereon prior to the taking and inasmuch as the right-of-way itself at its closest, point to Defendant’s house was only 81/á feet therefrom, that such fact made the house absolutely valueless in his opinion and he placed a value on the house of . $12,934.
Mr. Emmett M. Glynn, a realtor .in Terre-bonne Parish, also testified for the Defendant giving his qualifications which were acceptable to the Court as categorizing him as an expert, he valued the house before the taking at $12,500. He likewise was of the opinion that subsequent to the taking because of the close proximity of the house to the road and right-of-way that it had no market value, giving as one of his reasons for this opinion the fact that FHA required a minimum front yard of 20' feet from the street to the house and because of the .inability to finance a mortgage through FHA a purchaser could not be found for the house — saying: “ * * *' If you can’t get any money to sell something, finance it, you can’t sell it. I know that I couldn’t sell it.” Mr. Glynn further-stated that the drainage ditch which is shown to have a minimum depth of 2 feet, was of sufficient size to run an outboard motor boat in, which he found to be very detrimental. He maintained throughout, his testimony that, while before the widening of the road the house had a market value of $12,500, subsequent to the taking-the value was nil.
Plaintiff called as its witness Mr. J. Louis-Blouin, a realtor in Houma, Louisiana,, whose qualifications the Trial Court excepted as an expert, who testified that in his. opinion the market value of the house both before and after the taking was $7,194 by using replacement value, less depreciation of the house, less the value of the land. Though at one time Mr. Blouin had expressed the opinion that by the widening of the road and the taking of the additional right-of-way — that is, when he made his appraisal in 1957 prior to the completion of the highway. — there would be an additional severance damage suffered by Defendant of $2,500 because of the diminution in value of the house resulting from the taking of the yard space, it was his opinion on the trial of the case and from his observation *603 •of the premises subsequent to the taking that in truth and in fact the market value of the property was as good, if not somewhat better, subsequent thereto than at the time of the taking in view of the improved road. He testified at length that there were in this area many homes located on the highway in as close proximity •to the highway as that of Defendant’s home subsequent to the taking; that in this area many of the residents preferred to live within close proximity to the highway; that in giving consideration to comparables to which he referred he was of the opinion that though the house of Defendant was worth the sum of $7,494, he was firmly convinced that “ * * * the taking of this area from the front yard didn’t affect the value of that house in my opinion at all. The depreciation came from the reduction in the size of the lot, of the front yard.” In his determination of this depreciation, attributed by him to the loss of the front yard space, he fixed a figure of $2,587. It is to be noted that the Plaintiff actually deposited in the Registry of the Court the sum of $2,000 representing their estimate of severance damage. Mr. Blouin, who, from his testimony, is thoroughly familiar with real estate in this particular area saw no objection whatever from the standpoint of the market value of the house by its being in such close proximity to the road and, as stated heretofore, cited many instances of other •residents having their homes within the same proximity to the road. Mr. Blouin rtook issue with Mr. Glynn’s statement in reference to the requirement of the FHA that a house be more than 20 feet from the right-of-way, stating that the requirement was that the house be not less than 70 feet from buildings across the street. Pie, however, was of the opinion that this was of no moment in considering the market value of this house for the additional reason that financing of loans by local residents were made through local loan associations, banks or other institutions and that there were many instances where financial assistance was made available for the purchase of homes located within as close proximity to the right-of-way as was this house.
In addition, Plaintiff called as its witnesses Mr. Eugene Y. Charron who testified that he was a graduate of Louisiana State University and had taken special courses in appraising at the University, and Mr. James W. Thompson who formerly was engaged in the general real estate business in Baton Rouge when, as such, he had made many appraisals and valuations of properties. Both Mr. Charron and Mr. Thompson are now, however, full time employees of the State of Louisiana. Counsel for appellee strenuously argue that the testimony of these witnesses should not be given weight because being employees of the Department of Highways, their views would be prejudicial to the Defendant because of their interest in the case, citing LSA-C.C. Article 2282, providing:
“The circumstance of the witness being- a relation, a party to the cause, interested in the result of the suit, or in the actual service or salary of one of the parties, is not a sufficient cause to consider the witness as incompetent, but may, according to circumstances, diminish the extent of his credibility.”
Though the fact of the employment of these two gentlemen should be taken in consideration in weighing the effect to be given to their testimony, we find nothing in the opinions expressed by them to indicate that they.did anything but express their sincere opinions.
In his reasons for judgment, the Trial Judge, while expressing confidence in the qualification of Mr. Blouin as an expert realtor, observed that his testimony was somewhat weakened because of the fact that in their appraisals these three gentlemen (Mr. Charron, Mr. Thompson and Mr. Blouin) concluded that the land expropriated was worth $1,197.90; the trees $131 and the tenant house $972 and damages as of the date of trial, none, or a *604 total of $2,300. His conclusion was that their agreement on the values to the penny-weakened the effect to be given thereto. It is significant, however, that the Trial Judge in his reasons for judgment awarded to the Defendant the sum of $1,197.90 for the property expropriated; $150 for the shrubbery and $1,000 for the tenant house, or a total of $2,347.90 for these three items- — a difference of only $47.90 between the value these gentlemen placed on these items of damage and that which the judge allowed. So that it does indeed appear that the Trial Judge attributed to the opinions expressed by these three men confidence in their appraisals, the only difference apparently between his conclusion and that expressed by these three appraisers is therefore on the issue of severance damage for which the judge made an allowance to Defendant of $12,500 which he apparently found to be the value of the house before the expropriation and accepted the opinions of the experts called by Defendant that following the taking the house had no- market value whatever.
In 35 C.J.S. page 343, we find “expropriation” defined as:
“In Eminent Domain § 1 it is stated that a meaning has been attached to the term ‘expropriation’ imported from its use in foreign jurisprudence,, which makes it synonymous with ‘the exercise of the power of eminent domain.’ ”
“Eminent Domain” is defined in Vol. 29 C. J.S. § 1, page 776 as:
“Eminent domain is, broadly, the right or power to take private property for public use. More precisely, it is the right of the nation or the state, or of those to whom the power has been lawfully delegated, to condemn private property for public use, and to appropriate the ownership and possession of such property for such use upon paying the owner a due compensation to be ascertained according to law. * * *»
Expropriation or the exercise of the right of eminent domain results, in many instances, in the dislodgment of an individual from a home to which he has become sentimentally attached and, perhaps emphasizing the harshness of the remedy, no award may be made in an expropriation proceeding in Louisiana having as its basis sentiment but under the decisions “due compensation to be ascertained according to law” means market value of the land' expropriated which has been defined to be that value for which a willing purchaser would pay to a willing seller for the property. As to the land not taken adjoining the property taken, the courts have held' that the diminished value of the remaining land is compensable but that the owner is required to prove such damages by competent evidence. Louisiana Highway Commission v. Ferguson, 176 La. 642, 146 So. 319. So that if the taking of the right-of-way strip decreases the value of the remainder of the Defendant’s land, then he should be compensated for that damage in addition to being paid for the land actually taken. Louisiana Highway Commission v. Boudreaux, 19 La.App. 98, 139 So. 521; Texas Pipe Line Company v. Barbe, 229 La. 191, 85 So.2d 260.
As stated by us in East Baton Rouge Parish Council v. Koller, La.App., 94 So.2d 505, at page 507, “ * * * While consequential damages to the land not taken such as loss of esthetic values or additional discomfort are not per se com-pensable, they are properly considered in determining the expropriation award if they be such as diminish the commercial value of the remaining property. Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14; Louisiana Power & Light Co. v. Dileo, La.App. 1 Cir., 79 So.2d 150.”
The home of Mr. Bourg was not within the right-of-way expropriated by Plaintiff, was in no way physically damaged, and therefore in our opinion we believe it to be improper to consider that *605 by this Expropriation he suffered damages to the extent of the loss of the full value of the house. More properly, in ascertaining the damages which Mr. Bourg sustained, it is essential that we consider the value of the house in connection with the land on which it rests and determine what, if any, consequential damages were sustained by Mr. Bourg as a result of this expropriation. Pictures of the property were offered both by Plaintiff and Defendant and from examination of them they furnish mute but corroborating evidence that the opinion the house is now valueless is without foundation. Prior to the taking the house was located on a shell road in close proximity thereto with all of the disturbing factors of dust and noise from vehicular traffic thereon on the irregular surface. The road is now a concrete slab and though perhaps motorists will be inclined to pass the home at increased speed, it would appear that Defendant’s apprehension from reckless motorists should be decreased inasmuch as the curve in the road was eliminated and the concrete forms a better surface for safe travel than a shell road which at times gets holes and ridges in it. Furthermore, Defendant’s apprehension as to uncontrolled vehicles running into his home on the new highway should, in fact, be diminished by the presence of the drainage ditch which should somewhat reduce the forward movement of the uncontrolled vehicles. The evidence further shows that this drainage ditch became necessary because of the topography of the adjoining land in that it was higher than the right-of-way and therefore the ditch was essential to permit proper drainage' of the roadway. From our reading of the record the ditch does not present an aesthetic eyesore but, on the other hand, it is sloped and is grassed with underground drainage pipes to convey the water to the other side of the road into the bayou.
As to the determination of the damage resulting from bringing the road into closer proximity to the house, it therefore appears to us that the question is only one of degree and not of totality. We believe that to some extent there were consequential damages suffered by Mr. Bourg by the placing of this highway in closer proximity to his home than it was before the road improvement was made.
We are therefore presented with the determination of the amount of compensation to be awarded to Defendant resulting from placing the new highway in closer proximity to his home. We have been cited to no authorities by counsel for either appellant or appellee and our own independent research has revealed none wherein this particular question has arisen. Mr. Blouin, in his effort to determine the amount of compensation due to Defendant for severance damage, utilized the method by which he theoretically placed the house on a lot 438 feet wide by a depth of 200 feet giving an area of 2.156 acres. He valued the totality of the 2.156 acres at $4,800 per acre or a total of $10,348. Being of the opinion that the damage suffered by Defendant was to the reduction in the size of the lot or more particularly the diminution in value of the lot as a result of the taking of a portion of the front yard, he evaluated the acreage which he theoretically accorded to this house at $10,348 and then arrived at a figure of $2,587 as representing the diminution in value of the lot which is one-fourth of the totality of the value accorded to same. In our opinion the determination of the damages suffered by Defendant results from the diminution of the value of the house and the envisioned lot as a unit; that is, giving to the house a frontage of 438 feet on the road by a depth of 200 feet and accepting Mr. Blouin’s evaluation of this lot as being $10,348, we will accept the valuation of $12,500 as the value of the house itself as found by the Trial Judge. Adding these two figures together we arrive at the sum of $22,848 as the value of the house sitting on a lot so described. In our opinion an allowance to *606 Defendant of the sum of $2,284.80 representing a 10% diminution in the value of the house and lot will be adequate to compensate him for the consequential or severance damages suffered as result of this expropriation.
The appraisers for the Defendant in the Trial Court were in accord, generally, that the awards made by the Court for the value of the property expropriated, the tenant house and the shrubbery were fair. Counsel for the appellee is satisfied with the valuation of $1,197.90 fixed by the Trial Court as the value of the property expropriated, but feels that he has proven a value of $S70 as the value of the shrubbery destroyed, whereas the Court only allowed him $150 and in his opinion he has proved $2,000 as the valuation of the tenant house which was taken.
In regard to the shrubbery which was destroyed as result of the taking, the evidence as to the number and value of the plants so taken is,, to say the least, unconvincing. Mr. Emmett Glynn who testified for the Defendant placed a value on these shrubs of $570, the Plaintiff offered $131 as damages and the Trial Court awarded the sum of $150 for same. A review of the evidence does not satisfy us that the Trial Court did anything other than award Defendant a fair value for damages sustained by losing the shrubs in fixing the amount at $150. Though Mr. Bourg testified that he himself would not accept $500 for each of the plants, this, of course, represents his personal views and sentimental value attached to same inasmuch as the record reflects that he himself had planted the shrubs and had cared for them and no doubt in his mind they were worth the amount which he valued them for; however, as previously stated in making awards in expropriation cases, we are bound to award only the market value. Furthermore, as stated hereinabove, the evidence is far from convincing as to the number and type of plants actually taken by the Department of Highways and we feel that the award of $150 allowed by the Trial Court fairly compensates the Defendant for the shrubbery destroyed.
Insofar as the tenant house is concerned, the Trial Court made an allowance of $1,000 as representing the value thereof. Counsel for appellee takes issue with the Trial Court for fixing a value of this house at $1,000 because of the introduction by him of evidence to the effect that the house was rented by the Defendant to a tenant for the sum of $10 cash per month together with services to be performed by the tenant in behalf of Mr. and Mrs. Bourg which he valued at the sum of $20 to $30 per month, or a total rental of $30 to $40 per month and he maintains that a property producing an income of $360 per year accepting the lower figure of $30 per month would be worth the sum of $3,600 based upon a 10% return. Mr. Chauvin, one of his witnesses, did not see the house but upon being given the dimensions and on viewing photographs of it testified that it was worth at least $2,000.
We have examined the photographs in the record and while valuations may be ascertained or determined by resorting to an income producing formula, it is apparent that the allowance by the Trial Court of $1,000 for this fairly ancient tenant house adequately compensates Defendant for the damages sustained as a result of the taking thereof.
Accordingly, and for these reasons, the judgment of the Trial Court awarding the Defendant the sum of $14,847.90 as a totality of the damages sustained by him resulting from this expropriation is reduced to the sum of $4,632.70 and in all other respects the judgment as amended is affirmed.
Amended and as amended affirmed.