199 So.2d 185 (1967)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellant,
v.
Shelley Joseph MOULEDOUS, Defendant-Appellee.
No. 1910.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
Rehearing Denied May 18, 1967.
Writ Refused June 20, 1967.
*187 D. Ross Banister, Ben C. Norgress, Glenn S. Darsey, Baton Rouge, Robert J. Adams, Lafayette, Marshall W. Wroten, Baton Rouge, for plaintiff-appellant.
Deshotels & Maraist, by Frank Maraist, Abbeville, for defendant-appellee.
Before TATE, FRUGE and HOOD, JJ.
HOOD, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Highways, against Dr. Shelley Joseph Mouledous, under the provisions of LSA-R.S. 48:441 et seq. Plaintiff deposited $17,990.00 in the registry of the court at the time the order of expropriation was signed, and that amount was accepted and received by defendant. Later Dr. Mouledous filed an answer demanding that he be awarded an additional sum as damages because of the widening of a ditch located on his remaining property. After trial, the trial judge awarded defendant the additional sum of $26,102.00. Plaintiff has appealed.
A separate expropriation suit was instituted by plaintiff against the same defendant, affecting another tract of land owned by the defendant located west of and adjacent to the property affected here. These two cases were consolidated for the purpose of trial and appeal, and we are rendering judgment in both suits on this date. See State of Louisiana, through the Department of Highways, v. Mouledous, La.App., 200 So.2d 384 (No. 1911 on our docket).
In the instant suit plaintiff seeks to expropriate the full ownership, less minerals, of three small tracts of land, being portions of a larger tract owned by defendant, in Vermilion Parish. These tracts are being expropriated for use in the construction of a public highway, known as the Abbeville By-Pass Highway, and for the west approaches to a bridge which plaintiff proposed to build at that point spanning the Vermilion River. All three tracts comprise a total of 43,017.24 square feet, which is a little less than one acre.
The parent tract heretofore owned by defendant and involved in this particular suit is located west of and bordering on the Vermilion River, just outside the corporate limits of the City of Abbeville. The river runs north and south, and U. S. Highway 167 runs parallel to and about 500 feet west of the river at that point. The parent tract which is owned by defendant and affected by the instant suit is located east of and adjacent to U. S. Highway 167, and it extends from that highway to the west bank of the river. Dr. Mouledous also owned a much larger tract of land which is located west of and adjacent to U. S. Highway 167. In the companion suit, which is consolidated for trial and appeal with the instant one, plaintiff is expropriating a part of that larger tract to be used in the construction of the same by-pass highway.
In March, 1961, before either of these suits were instituted, Dr. Mouledous filed a plat of survey in the Conveyance Records of Vermilion Parish, which plat purports to subdivide a substantial portion of his property, on both sides of U. S. Highway 167. The plat shows that the south portion of all of such property is divided into 173 lots, and a number of streets are shown on the plat. Attached to and filed with the plat is an authentic act, executed by defendant on March 1, 1961, which among other things designates the subdivision as the "Shangri-la Subdivision," and provides that the streets and the alleys shown on the plat are dedicated to the public at large for public use.
*188 The instant suit relates only to that part of defendant's property which is located east of U. S. Highway 167, being between that highway and the Vermilion River. Approximately the south three acres of that parent tract was included in the Shangri-la Subdivision, and that area was divided into ten lots, with one public street. The street, designated as Shelley Michael Street, is shown on the plat as running east and west through the center of this small parent tract, from U. S. Highway 167 to the river. Lots one through five have frontages on the north side of that street, and Lots six through ten have frontages on the south side of it. One of the lots on the south side of Shelley Michael Street was sold by defendant before the suit was filed, and it was later acquired by plaintiff. In this expropriation suit plaintiff is taking all of the remaining lots located south of Shelley Michael Street, and small portions of two lots located north of that street. As an appendix to this opinion, we are attaching a plat which shows the manner in which this parent tract was subdivided. The shaded areas, marked "A", "B" and "C" on the plat, are the portions of the parent tract which are being taken here.
This suit was instituted and the order of expropriation was signed on April 4, 1962. As we have already noted, plaintiff deposited $17,990.00 in the registry of the court when the order of expropriation was signed. The pleadings show that this included $16,190.00 as the value of the property taken, and $1,800.00 as "damages."
On April 16, 1962, the defendant executed and filed in this suit an authentic act, acknowledging receipt of $17,990.00 from the Clerk of Court and stating that he acquiesces in the expropriation and gives plaintiff full acquittance for the expropriation of the property. Dr. Mouledous testified that when he executed this act and accepted the money deposited, he knew that it included a payment for "damages" as well as for the property taken.
On February 8, 1963, and pursuant to the authentic act executed by defendant, the trial judge issued a decree ordering the Clerk of Court "to pay and deliver to the defendant, Shelley Joseph Mouledous, the sum deposited by plaintiff in the registry of the Court as full consideration for the expropriation of the property described in the petition for expropriation filed by plaintiff in this matter."
The construction of the Abbeville By-Pass Highway was completed on June 29, 1964. This new highway runs east and west, and its intersects and crosses U. S. Highway 167. The construction of that by-pass highway, however, caused the drainage of water from some of the land located west of U. S. Highway 167 to be diverted and to flow in an easterly direction into Vermilion River instead of into a coulee located some distance west of that highway. To take care of this drainage, plaintiff installed larger culverts under U. S. Highway 167, at the point marked "D" on the attached plat. These larger culverts permitted this increased flow of water to get from the west to the east side of that highway. The natural drainage of water from point "D" to the river was by means of a ditch on defendant's land, which ditch is shown on the attached plat, and is sometimes referred to as the "Shangri-la Ditch." Plaintiff then, without further authority from defendant, proceeded to widen and deepen the ditch to enable it to handle the larger volumes of water which now flow through it. The ditch was enlarged some time during the year 1963 or the early part of 1964.
On December 4, 1964, after the ditch had been enlarged and the construction of the new highway had been completed, defendant filed an answer in this suit admitting that the amount which had been deposited is "just" for the property expropriated, but alleging that this payment "is not inclusive of damages from Shangri-la ditch not included in expropriation." In the answer filed by the defendant in this suit, he does not use the term "severance damages," but *189 he bases his claim solely on allegations that in constructing a portion of the new highway which is west of the property being taken here plaintiff caused more water to drain on defendant's remaining property, that plaintiff widened the drainage ditch located on his property, that in order to restore the lots affected to their former usefulness as building sites it will be necessary to install and to cover 72-inch concrete pipes in this ditch at a cost of $12,000.00, and that if the ditch is not covered the five lots traversed by this ditch will sustain a loss in value of $2,500.00 each. He prays primarily for judgment in the sum of $12,000.00, being the alleged cost of installing and covering the drainage pipe, but he also demands "in the alternative, that the amount herein awarded for land expropriated be amended and that the damages shown herein be increased by addition of extra damages to $29,900.00."
We note that defendant has alleged and demanded damages either in the amount of $12,000.00, or in the sum of $12,500.00, but that the trial judge nevertheless awarded him $26,102.00, which is greatly in excess of the amount sought by the defendant.
Plaintiff filed a motion to dismiss defendant's answer, alleging that the authentic act executed by defendant on April 16, 1962, constitutes a clear acquittance to plaintiff and a waiver of any claims which defendant otherwise might have had to recover an amount over and above the sum which was deposited initially by plaintiff. The trial court denied this motion to dismiss. Plaintiff then filed an exception of res judicata and an exception of no cause of action, both of which exceptions were referred to the merits. The case then came up for trial on its merits on September 9, 1965.
At the trial, defendant presented evidence showing that Shangri-la ditch had been widened and deepened by plaintiff, and that the cost of installing 72-inch concrete pipe in that ditch and covering it with dirt would be $26,112.00. Plaintiff objected to any evidence as to such costs, on several different grounds: (1) That the damages claimed did not result from the expropriation and thus they cannot be classified or claimed as severance damages; (2) that the release and acquittance granted by defendant on April 16, 1962, fully and finally barred him from claiming any additional sums of money as a result of this expropriation, and thus the matter is res judicata; (3) that plaintiff had the right to widen and deepen Shangri-la ditch under LSA-R.S. 48:223 (C); and (4) that in any event defendant's claim would be in tort and that such a claim cannot be urged in an expropriation suit. All of these objections were overruled by the trial court, and the evidence offered by defendant was admitted.
This evidence shows that long prior to the institution of this suit a drainage ditch existed on defendant's property, running generally east and west and extending from U. S. Highway 167 to the Vermilion River. This ditch has always been in the same location as is the Shangri-la ditch shown on the attached exhibit. About 20 years ago concrete pipe, 24 inches in diameter, was installed in that ditch, and the pipe was covered with dirt. About 1961, before the construction of the by-pass highway had been proposed, Dr. Mouledous engaged a contractor to dig up all of this concrete pipe. He testified that his purpose was to dig another ditch along the north side of Shelley Michael Street and to cause the water to drain in that new ditch instead of the one which has existed heretofore. The contractor engaged by defendant to do this work testified that he removed the old 24-inch pipe because it was "too small" and also because Dr. Mouledous wanted to change the route of this drainage outlet. After the 24-inch pipe had been removed from the ditch, the defendant learned of the proposed new highway, so he discontinued his project of changing the location of the ditch. At the time this expropriation suit was filed, therefore, Shangri-la ditch was an open ditch, and the concrete pipe *190 which had formerly been buried in that ditch had been removed.
As we have already noted, in 1963 or 1964, while the construction of the by-pass highway and bridge approaches were underway, plaintiff installed larger culverts under U. S. Highway 167 and it enlarged Shangri-la ditch by widening and deepening it. The record does not show the exact size of the ditch before plaintiff undertook to do this work, so the evidence is not clear as to how much additional property was taken or used for the enlarged ditch. Defendant contends, however, that since plaintiff widened it to some extent, he is entitled to recover the cost of installing concrete pipe and covering that pipe, so that the entire area will be covered as it once was. He takes the position that 72-inch concrete pipe will be required to handle the water which now must flow across his land, and that he is entitled to recover the cost of installing this larger concrete pipe and of recovering it.
One of the first important questions presented is whether the authentic act executed by defendant on April 16, 1962, has the effect of barring the defendant landowner from claiming the additional compensation demanded because of the widening of Shangri-la ditch.
The authentic act which was executed by defendant on April 16, 1962, contains the following provisions:
"That the said appearer does hereby acquiesce in said expropriation in so far as the property therein described is concerned and fully acknowledges and authorizes the court to render judgment herein affecting same, and confirmation of judgment as to the property described in the petition thereof, and further, the said Shelley Joseph Mouledous does hereby acknowledge to have received from Irby Hebert, Clerk of Court the sum of $17,990.00 deposited in the registry of court in connection with these proceedings and he does hereby give full and final acquittance to the said Clerk of Court and to the plaintiff therein, State of Louisiana, through the Department of Highways as a full consideration for the expropriation of the property described in the said petition."
Defendant points out that the document grants acquittance only for "the property described in the said petition," and that it does not release plaintiff from its obligation to pay for the property which was taken in widening the ditch or for the damages resulting from the work done on that ditch. He contends that the widening of Shangrila ditch constituted an "appropriation" of defendant's property for the construction of a ditch or drain, and that under the provisions of LSA-R.S. 48:223(A) he is entitled to be compensated for the property or rights so appropriated and for severance damages, as in expropriation cases. He cites the case of Bernard v. State Dept. of Public Works, 127 So.2d 774 (La.App.3d Cir. 1961), as authority for that argument.
In an expropriation suit such as this, the landowner is authorized to claim additional compensation by setting forth his demands in his answer. LSA-R.S. 48:450-451. By that proceeding, however, he is limited to claiming the market value of the property expropriated and severance damages to his remaining property resulting from the expropriation. LSA-R.S. 48:451-453; Louisiana Highway Commission v. De Bouchel, 174 La. 968, 142 So. 142 (1932); and State Through Department of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961).
In the instant suit, the petition and the documents annexed to it clearly show that the deposit made by plaintiff was intended to cover the value of the property taken and severance damages, and the defendant acknowledges that he was aware of that fact when he granted the release. For that reason, and because of the fact that the landowner ordinarily is limited in an expropriation suit to claim the value of the property taken and severance damages, we conclude that the authentic act executed *191 by defendant on April 16, 1963, constitutes a full and final release to plaintiff from any further claims by defendant for the value of the property actually taken and for any severance damages to defendant's remaining property resulting from that expropriation.
We are convinced that the claim for damages urged by defendant should not be classified as severance damages resulting from the taking in this particular suit. The property which was expropriated in this suit, and the use of such property for constructing a highway, did not cause additional water to flow through Shangri-la ditch and thus it did not make the widening of that ditch necessary.
We also are convinced that defendant's claim in this proceeding is not a claim in "tort." Under the provisions of LSA-R.S. 48:223 (C), plaintiff had the right to widen and deepen Shangri-la ditch, which is shown to be a natural drainage ditch forming a part of the drainage system of a state highway. Its action in widening this ditch was deliberate and was for a public purpose. There is no contention that it took more of defendant's land than was needed to widen and deepen the ditch, or that the department was negligent or caused any unnecessary damage in enlarging the ditch. If any additional property was taken or used for the widening of this ditch, the taking may properly be considered as an "appropriation" of such property, as contended by defendant, but not as a "tort." See Bernard v. State, supra. For reasons which will be shown later, however, it is not necessary for us to determine at this time the question of whether the defendant is entitled to recover compensation because of this appropriation.
Article I, Section 2, of the Louisiana Constitution provides that private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid. Our Supreme Court has held that this provision of the constitution is self-executing, and that the measure of recoverable damages in a suit predicated on this constitutional provision is the diminution of the market value of the property. Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666; Aleman v. Sewerage and Water Board of New Orleans, 196 La. 428, 199 So. 380; and Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14. There may be instances where the state is authorized to appropriate private property for a public use without compensating the landowner for his property. In cases where the state has "appropriated" private property for public purposes, and compensation is due the landowner for it, the landowner may maintain an action against the state for the compensation due him without the necessity of first obtaining the consent of the state to maintain such a suit. Angelle v. State, supra.
Assuming for the purpose of this suit that defendant is entitled to be compensated for that part of his land which was taken in widening Shangri-la ditch, then defendant clearly would be entitled to maintain an action against the state for the diminution in value of his property as a result of the "appropriation." Such an action, however, would be separate from and unrelated to the instant expropriation suit.
In summarizing our conclusions, we hold that the claim for damages which defendant urges here is not a claim in tort, and it may not be asserted as a claim for severance damages in the instant suit. It may be asserted, however, as a claim for severance damages in the companion suit (No. 1911), or it might be urged as an entirely separate and unrelated claim for compensation resulting from the "appropriation" of defendant's property by plaintiff. In either event, the release or acquittance which defendant executed on April 16, 1963, does not bar him from asserting such a claim as one for severance damages in the companion suit or as a separate claim for compensation resulting from an "appropriation."
*192 We note here that the same claim has been urged by defendant in the companion suit (No. 1911), and we have considered that claim as being one for severance damages in that suit.
The defendant contends, however, that he is entitled to assert in this proceeding his demand for damages because of the "appropriation," even though these damages did not result from the expropriation in this suit. The trial judge held that he had a right to urge his claim in this action. Plaintiff, in contending that the trial judge erred, argues that in an expropriation suit the issue must be confined to ascertaining the market value of the property and the severance damages, if any, resulting from the taking.
In Louisiana Highway Commission v. De Bouchel, supra, our Supreme Court said:
"It is well settled that, in an expropriation suit, the issue must be confined to ascertaining the market value of the property and the damage growing out of the expropriation, at the date when the suit was filed, and to nothing else. Louisiana Ry. & Nav. Co. v. Jones, 113 La. 29, 36 So. 877; Louisiana Ry. & Nav. Co. v. Sarpy, 125 La. 388, 51 So. 433; Louisiana Ry. & Nav. Co. v. Xavier Realty Co., 115 La. 328, 39 So. 1."
The same court also held in State, Through Department of Highways v. Guidry, 240 La. 516, 124 So.2d 531, that when the Highway Department expropriates property under the provisions of La. Const. Art. VI, Sec. 19.1, and LSA-R.S. 48:441 et seq., "there are only two questions which the courts may determine: (1) the adequacy of the compensation, and (2) whether the property was taken for a public purpose."
The Highway Expropriation Act (LSA-R.S. 48:441 et seq.) obviously contemplates that no other issues may be presented in an expropriation suit except those specifically authorized therein. LSA-R.S. 48:447, for instance, provides that a defendant who desires to contest the validity of the taking may file a motion to dismiss within ten days from the date the notice is served on him, and his failure to file such a motion within that time "constitutes a waiver of all defenses to the suit except claims for compensation." The act further provides that by filing an answer he may apply for a trial to determine the "just and adequate compensation to which he is entitled," provided that in that answer he sets forth "the amount he claims as the value of each parcel expropriated and the amount he claims as damages to the remainder of his property." (See LSA-R.S. 48:451.) The "damages" referred to in the last cited section of the statute uniformly have been held to mean "severance damages" to the remainder of his property left after the taking, being the difference between the market value of such remainder just before the taking and its decreased value at the time of the trial and resulting from the expropriation. State, Department of Highways, v. Babineaux, 189 So.2d 450 (La.App. 3d Cir. 1966).
There is no provision in the Highway Expropriation Act which can be construed as permitting the landowner to assert in an expropriation suit other claims which he may have against the state and which do not result from the expropriation.
We have considered a number of other cases where this issue was presented, some of those cases being: United States v. 76.15 Acres of Land, etc., 103 F.Supp. 478 (D.C. Cal.1952); United States v. Meyer, 113 F.2d 387 (C.A. 7 Cir. 1940); Oyster Shell Products Corp. v. United States, 197 F.2d 1022 (C.A. 5 Cir. La.1952); United States v. McCulley, 100 F.Supp. 379 (D.C.E.D.Tennessee 1951); City of Charlotte v. Spratt, 263 N.C. 656, 140 S.E.2d 341 (S.Ct.N.C.1965); State, By and Through Road Commission v. Parker, 13 Utah 2d 65, 368 P.2d 585 (1962); Burke v. Oklahoma City, 350 P.2d 264 (S.Ct.Okla.1960); El Monte School District v. Wilkins, 177 Cal.App.2d 47, 1 Cal.Rptr. 715 (1960). In each of the cited cases the landowner was not permitted to maintain a *193 cross-action or a reconventional demand against the condemning authority for damages which were not related to or which did not result from the expropriation.
We agree with the views which were expressed by the Supreme Court of Oklahoma in Burke v. Oklahoma City, supra, when the court said:
"The proceedings commenced by the City are to condemn two tracts of land owned by the defendants and defendants are entitled to compensation for any injury they may sustain by the appropriation of the land, either directly or indirectly. However, defendants are not entitled to litigate in this action alleged damages for property which was the subject matter of a previous condemnation proceeding which is not either directly or indirectly involved in the instant case and which the defendants have no interest in. If defendants are entitled to seek damages by virtue of the previous proceedings, their claim can only be litigated in a separate action."
And we note that in Nichols on Eminent Domain, the author comments:
"Though it is the general policy of the law to settle, if possible, in a single suit or action, all accrued conflicting claims of the adverse parties, that rule ought not to obtain in such an action as is here involved." (Nichols on Eminent Domain, Third Edition, Vol. 6, Section 24.31, page 67.)
Our conclusion is that in an expropriation suit filed by the state under the provisions of LSA-R.S. 48:441-460, the defendant landowner will not be permitted to litigate an action for damages, which alleged damages do not result directly or indirectly from the expropriation, by incorporating his allegation of and prayer for such damages in the answer which he files in that expropriation suit. If the landowner fails to contest the validity of the taking by filing a motion to dismiss within the ten day period allowed by LSA-R.S. 48:447, then we think his failure to do so constitutes a waiver of all defenses or claims in that expropriation suit, except that he may claim the market value of the property taken and severance damages to his remaining property resulting from the expropriation. The measure of the severance damages which he may claim is the difference between the market value of his remaining property immediately before the expropriation and its diminished value resulting from the expropriation at the time of the trial. He will not be permitted to maintain in that expropriation suit an action against the state for damages which are not severance damages, as above defined, or which did not result from the expropriation.
Since the claim of the defendant in the instant suit is not for the market value of the property taken or for severance damages resulting from the expropriation, his claim should not have been allowed. The trial judge erred, therefore, in allowing it in this proceeding. Since the same claim may be urged in the companion suit as a claim for severance damages, or perhaps in a separate action as an action for compensation because of an appropriation, we have decided that his claim should be dismissed as of nonsuit.
For the reasons herein set out, we hereby reverse that portion of the judgment appealed from which reads, "It is ordered, adjudged and decreed that in Suit Number 23,104 the defendant, Shelley Joseph Mouledous, do have judgment against the State of Louisiana, through the Department of Highways, plaintiff, in the full and just sum of Twenty-Six Thousand One Hundred and Two and No/100 ($26,102.00) Dollars with legal interest from date of filing of suit, April 4, 1962." And, judgment is hereby rendered rejecting the demands of defendant-appellee in this suit (being Suit No. 23,104 on the docket of the district court) as of nonsuit and without prejudice. The costs of this appeal are assessed to defendant-appellee.
Reversed and rendered.
*194