CULPEPPER, Judge.
This case is a sequel to State, Department of Highways v. Mouledous, 199 So.2d 185, (La.App. 3rd Cir. 1967). There the State expropriated three small portions of a residential subdivision for highway construction purposes. In his answer, Moule-dous claimed damages caused by the State’s widening an existing drainage ditch across the rear portions of five lots to handle increased water drainage from the new highway construction. We held that since the property taken to widen the ditch was not being expropriated, Mouledous could not seek in those proceedings compensation and damages resulting therefrom. However, we reserved to him the right to file a separate action for compensation and damages caused by the State’s appropriation of his property to widen the ditch. The present case is one which Mouledous has now filed for damages resulting from the appropriation. See the plat at 199 So.2d 194, which shows the residential lots, the three tracts expropriated in the prior suit and the ditch known as “Shangri La Ditch”.
Mouledous’ petition in the present case seeks damages in the sum of $18,648, representing the actual cost incurred by him in placing 72-inch culverts in the widened ditch and covering them, in order to save the usefulness of the five lots for residential purposes. The State filed several exceptions, one of which was an exception of no cause of action based on the grounds that under the jurisprudence the measure of compensation and damages due a landowner for an “appropriation” is the same *290 as that in an “expropriation”, i. e., the market value of the property taken plus severance damages to the remainder. The State contended in the exception that Mou-ledous had alleged only a “cost to cure”, which is not a proper measure of damages. These exceptions were referred to the merits. The case was tried on a stipulation of facts that plaintiff’s witnesses, who were respectively the engineer who drew the plans for the culverts and the representative of the construction company which did the work, would testify that the total cost was $18,648. No other evidence was introduced by plaintiff or defendant.
The district judge overruled the State’s exceptions and awarded plaintiff judgment on the merits for the sum of $18,648, which is the cost of covering the ditch. The defendant appealed.
The substantial issue on appeal is whether the court erred in awarding the “cost to cure”, without any evidence in the record to show whether these costs exceeded the diminution in fair market value of the lots caused by the widening of the canal.
Our jurisprudence is established that in a suit by the owner for damages resulting from the appropriation of his property for public purposes, the recoverable damages are the same as those in a suit for expropriation, State, Department of Highways v. Mouledous, 199 So.2d 185, (La.App. 3rd Cir. 1967); Angelle v. State, 212 La. 1069, 34 So.2d 321 (1948); Aleman v. Sewerage & Water Board, 196 La. 428, 199 So. 380; Schneidau v. Louisiana Highway Commission, 206 La. 754, 20 So.2d 14; Louisiana Constitution Article 1, Section 2.
In the recent case of State, Department of Highways v. Mason, 254 La. 1035, 229 So.2d 89 (1969) our Supreme Court rejected the “cost to cure” method of determining severance damages. There the State expropriated a 10-foot strip from the front of defendant’s property which he was using as a service station, restaurant and motel. Defendant contended he should have been awarded the cost of demolishing and reconstructing the service station building, so as to provide space for two pump islands with four lanes, which the station had previous to the expropriation of the 10-foot strip. Our Supreme Court rejected this cost to cure concept and held as follows :
“We think the Court of Appeal was correct under the facts herein. The ‘cost to cure’ concept has been brought into our appellate court jurisprudence apparently by various expert appraisal witnesses, and some appellate courts have adopted it without referring to it as a ‘cost to cure’ theory. If such an approach has relevance to the measure of damages, it should only be employed to demonstrate a diminution in market value resulting from the partial taking, for we find no sound basis in this Court’s jurisprudence for the application of this method of assessing severance damages, save in a most unique situation (which is not present here) like that appearing in State Department of Highways v. Ouachita Parish School Board, [La.App.,] 162 So.2d 397 (cert. denied). See also Nichols on Eminent Domain, 3rd Ed., Vol. 4, Sec. 12.32, pages 217-238, which indicates that this approach may be used in special instances wherein the ascertainment of market value of the facility is not possible.”
The case of State, Department of Highways v. Ouachita Parish School Board, 162 So.2d 397 (La.App. 2d Cir. 1964), writ of certiorari refused, referred to by the Supreme Court in State v. Mason, supra, involved an unusual situation. There the State expropriated an entire block of land from property being used by defendant as an elementary school. The court found that after the taking the remaining property was rendered completely useless for school purposes. Since the school property had no market value, it was impossible to determine the severance damages by use of the before and after value method. In *291 that situation, the court applied the cost to cure concept and awarded the cost of acquiring a new site and constructing new school buildings, less the salvage value of the old school property.
In Dakin & Klein, Eminent Domain in Louisiana, page 82, et seq., we find a discussion of the cost to cure concept. Generally, this method has been applied to minimize damages where the cost to cure is less than the severance damages which otherwise would have resulted. For instance, in Gravity Drainage District No. 1 v. Key, 234 La. 201, 99 So.2d 82 (1958) the plaintiff expropriated a strip of land along a railroad to dig a large drainage ditch. This separated the railroad from defendant’s remaining land, which before the taking was suitable for industrial purposes by reason of being adjacent to the railroad. Defendant contended that after the expropriation the remainder of his property was useful only for residential purposes, with a great loss in value. However, the evidence showed that by constructing culverts across the ditch defendant’s remaining property could retain its use for industrial purposes. The court awarded the cost of constructing these culverts, which was much less than the amount claimed by defendant as severance damages.
Generally, the cost to cure concept should not be applied where the cost to cure exceeds the diminution in fair market value to the remainder. For instance, in City of New Orleans v. Giraud, 238 La. 278, 115 So.2d 349 (1959), the plaintiff expropriated a strip of land for a new street which would pass only a few feet from the front of defendant’s residence. The defendant claimed severance damages of $27,000.00, which was the cost to move the house into a proper setting. But the evidence showed the diminution in value of the house before and after the taking was only $15,000. The court therefore refused to award the cost to cure, i. e., the cost of moving the house, and awarded only the diminution in value as severance damages.
Applying these rules of law to the present case, it is apparent that the cost to cure concept cannot be applied here. This is not a unique situation, such as the one in State v. Ouachita Parish School Board, supra, where the market value of the property before and after the taking could not be determined. We are dealing here with five small residential lots, each having a front of approximately 90 feet by a depth of approximately 115 feet. At the time of the taking there was an existing ditch across the rear portions of these lots. The lots had an ascertainable market value before the appropriation. After the appropriation, i. e., after the ditch was widened, the lots may have had less value. But certainly the plaintiff had the burden of proving the diminution in the value of these lots caused by the appropriation. It may be that this diminution was more than the $18,648 expenditure required to cover the widened ditch. But there is absolutely no evidence in the record to show this and we cannot make such an assumption. It is just as possible that the $18,648 cost to cure far exceeds the diminution in market value of these five small residential .lots.
In his written reasons, the district judge recognized that the proper measure of severance damages is the value before and after the appropriation. He stated “the cost to cure theory should only be employed to demonstrate a diminution in market value resulting from the partial taking.” He also recognized that “there is no testimony as to the dimunition of the market value of the property appropriated by the widening of the ditch.” However, the district judge assumed that the cost to cure, i. e., the cost of covering the ditch, was at least as much as the diminution in market value of the lots. We cannot agree that such an assumption can be made. The landowner clearly had the burden to prove this fact.
In view of the result which we have reached, it is unnecessary for us to consider the question of whether plaintiff is enti- *292 tied to attorney’s fees under Act 121 of 1972.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the defendant, State of Louisiana, through the Department of Highways, and against the plaintiff, Shelly Mouledous, rejecting plaintiff’s demands at his cost. All costs of this appeal are assessed against the plaintiff appellee.
Reversed and rendered.